**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, Plaintiff, v. ROLAND BLACK, Defendant. | ) ) ) ) ) ) ) ) ) | Case No. 18 CR 149-3 Judge Sharon Johnson Coleman |

**MEMORANDUM OPINION AND ORDER**

On June 25, 2021, a jury convicted defendant Roland Black of attempting to possess with intent to distribute 100 grams or more of a mixture and substance containing furanyl fentanyl, an analogue of fentanyl, in violation of 21 U.S.C. § 841(a). Before the Court is Black's motion for judgment of acquittal and motion for a new trial brought pursuant to Federal Rules of Criminal Procedure 29(c) and 33. For the following reasons, the Court denies Black's post-trial motions.

**Background**

During the five-day jury trial, the government presented evidence that Black's co-defendant, Millard Williams, made recorded telephone calls to Black and other co-defendants from an Atlanta jail. Evidence showed that on February 25, 2017, Williams and Black discussed a drug shipment. The next day, Black searched "latest drug bust Chicago" and "fentanyl" in a search engine on his iPhone. On March 1, Black and Williams discussed the shipment of narcotics and Williams informed Black that he would have to "grab" the shipment from "Maria Gonzalez." After Black and Williams set up the transaction, Williams contacted another co-defendant, Willie Alexander. Post office surveillance video showed that Alexander shipped a package containing a bundle wrapped in blue cloth from an Atlanta post office on March 2.

At trial, United States Postal Inspector Alex Lupiani testified that he intercepted a package

shipped from Atlanta to "Maria Gonzalez" with the address of 1008 North Springfield in Chicago. Special Agent Mark Wasunyk testified that law enforcement officers opened the package pursuant to a search warrant. The officers found two sealed packages of powder in a plastic bag wrapped in a blue shirt. At trial, forensic chemist Neele Shepherd testified that the sealed packages contained 518.42 grams of furanyl fentanyl and 494.47 grams of a mixture of furanyl fentanyl. Drug Enforcement Administration unit chief Liquon Wong testified that the chemical structure of furanyl fentanyl is substantially similar to fentanyl.

Meanwhile, after Black placed his narcotics order with Williams on March 1, he conducted an iPhone search for the terms "fentanyl hcl," "carfentanil," and "fentanyl hcl powder" finding articles on these substances. Text records presented at trial revealed that on March 2, the day the "Maria Gonzalez" package was supposed to arrive in Chicago, co-defendant Michelle Jamison texted Black to "Be on point B4 10:30." United States Post Service ("USPS") records showed that the "Maria Gonzalez" package was not delivered as scheduled. The IP address associated with Black's iPhone tracked the package over 100 times on the USPS's website. Five days later, Black told Williams on a recorded call that it appeared the drug transaction was "going south." Black agreed with Williams if the package was not "returned to sender," they would have to split the losses.

Further, law enforcement officials testified about the delivery of the narcotics to 1008 North Springfield on March 9, 2017. Specifically, Agent Tom Weingart testified that the furanyl fentanyl found in the shipped delivery was replaced with sham narcotics and that he brushed luminescent powder on the sham narcotics to see who would touch them. Agent Weingart also wired the box containing the sham narcotics to emit a signal when the box was opened. Agent James Lacey testified that he acted like a mail carrier in an undercover capacity and delivered the package to 1008 North Springfield Avenue. He testified a woman who said she was Maria Gonzalez took the package.

Helicopter surveillance footage showed that after Maria Gonzalez took the package, a man arrived at the North Springfield address, met with Gonzalez, and went into the apartment with her. Two minutes later, law enforcement received the signal that the package had been opened. Officers then went to the front door of the three-flat apartment building at 1008 North Springfield. Helicopter surveillance showed that thirty seconds after law enforcement arrived, the package of narcotics was thrown out the back of the three-flat. Surveillance video also showed a man exiting the back door of the middle unit and fleeing up the back stairs. Agent Wasunyk testified that he arrested Black on the top floor and Agent Weingart testified that he performed a black light test on Black's hand and found the luminescent power that had been brushed on the package.

**Discussion**

*Motion for Judgment of Acquittal*

Black first moves for a judgment of acquittal under Rule 29(c) arguing that there was insufficient evidence presented at trial for a rational trier of fact to find that he knew the parcel delivered to 1008 North Springfield contained a controlled substance. After a jury returns a guilty verdict, defendants seeking judgment of acquittal face a nearly insurmountable hurdle. *United States v. Cherry*, 920 F.3d 1126, 1133 (7th Cir. 2019). This is because when assessing Rule 29 motions, "courts view the evidence in the light most favorable to the government to determine whether any rational trier of fact could have found the essential elements of the charged offense beyond a reasonable doubt." *United States v. Wallace*, 991 F.3d 810, 812 (7th Cir. 2021). In doing so, courts do not re-weigh the evidence or second-guess credibility determinations and make all reasonable inferences in the government's favor. *United States v. Ginsberg*, 971 F.3d 689, 695 (7th Cir. 2020).

Black was charged with attempting to possess a controlled substance with the intent to distribute in violation of 21 U.S.C. §§ 841(a)(1), 846. According to the Seventh Circuit Criminal Pattern Jury Instruction for this offense, the government must prove beyond a reasonable doubt

that the substance was "some kind of a controlled substance," which is the instruction the Court gave to the jury. Nevertheless, Black argues that there was no trial evidence that he knew furanyl fentanyl was a controlled substance, although that was not the question before the jury. Indeed, this element of the § 846 charge is met regardless of which controlled substance Black believed he was getting. *See United States v. Weaver*, 8 F.3d 1240, 1244 (7th Cir. 1993); *United States v. Dominguez*, 992 F.2d 678, 682 (7th Cir. 1993).

Viewing the evidence and all reasonable inferences in the government's favor, there was abundant evidence that Black believed the package he intended to possess contained a controlled substance. Trial evidence revealed that Black placed a drug order with Williams on March 1, after which Black conducted an iPhone search for the terms "fentanyl hcl," "carfentanil," and "fentanyl hcl powder" finding articles on these substances. The government also presented USPS records at trial showing that the Maria Gonzalez package was not delivered on time and that the IP address associated with Black's iPhone tracked the package over 100 times on the USPS's website.

Also at trial, law enforcement officials testified about the delivery of the narcotics to 1008 North Springfield on March 9, 2017, including that the furanyl fentanyl found in the shipped delivery was replaced with sham narcotics. Helicopter surveillance footage showed that after "Maria Gonzalez" took the package at the North Springfield address, a man, later identified as Black, met her there. Once law enforcement received the signal that the package had been opened, officers went to the apartment. Surveillance showed that thirty seconds after law enforcement arrived, Black threw the narcotics package out the back of the three-flat apartment building. Also, surveillance video showed a man exiting the back door of the middle unit and fleeing up the back stairs. Agents then arrested Black. At that time, an agent performed a black light test on Black's hand and found the luminescent power that had been brushed on the package.

According, the Court denies Black's Rule 29(c) motion for acquittal because trial evidence

sufficiently supports his § 846 conviction beyond a reasonable doubt.

*New Trial Motion*

Next, in his Rule 33 motion for a new trial, Black argues: (1) the Court giving the § 846 offense elements jury instruction was in err and took defense counsel by surprise; (2) the Court erred in waiting to answer the jury's questions asked during deliberation; and (3) the Court erred in denying Black's request to question potential jurors without face masks during voir dire and erred in denying defense counsel's request to remove their face masks during the questioning of witnesses. Black also brings several perfunctory and undeveloped claims, also discussed below.

Rule 33 authorizes district courts to "vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33. Granting a new trial is "reserved for only the most extreme cases," and courts "approach such motions with great caution." *United States v. Coscia*, 4 F.4th 454, 465 (7th Cir. 2021) (quotation marks and citations omitted). "The applicable standard under Rule 33 requires a new trial 'only if there is a reasonable possibility that the trial error had a prejudicial effect on the jury's verdict.'" *United States v. Maclin*, 915 F.3d 440, 444 (7th Cir. 2019) (citation omitted). "The ultimate inquiry is whether the defendant was deprived of a fair trial." *United States v. Friedman*, 971 F.3d 700, 713 (7th Cir. 2020) (citation omitted). District courts have considerable discretion in determining Rule 33 motions. *Id. at* 716.

Black's first argument in his Rule 33 motion is that the Court erred by instructing the jury according to the Seventh Circuit Criminal Pattern Jury Instruction for attempting to possess a controlled substance with the intent to distribute. "[T]o receive a new trial based on erroneous instructions, a defendant 'must show ***both*** that the instruction did not adequately state the law and that the error was prejudicial to [him] because the jury was likely to be confused or misled.'" *United States v. White,* 443 F.3d 582, 587 (7th Cir. 2006) (citation omitted) (emphasis added).

As the trial evidence indicates, the intercepted furanyl fentanyl found in the shipped delivery

was replaced with sham narcotics. Under the circumstances, the committee notes to the Seventh Circuit Pattern Instruction for attempted possession with intent to distribute state:

> The sale of a non-controlled substance that the defendant subjectively believes to be a controlled substance can constitute an attempt to distribute. *See United States v. Dominguez*, 992 F.2d 678, 682 (7th Cir. 199[3]). In a case that does not involve an actual controlled substance—such as a case in which government agents supply "sham" narcotics for use in a transaction—it may be appropriate to use the bracketed language in the second and third elements.

The bracketed language states: "The government is not required to prove that the defendant knew the substance was actually a controlled substance." This instruction was proper under the circumstances based on the evidence that the Maria Gonzalez package was filled with sham narcotics. Black's argument that his counsel was "unfairly surprised" by the Court giving this instruction falls flat because Black was charged with one crime, attempting to possess a controlled substance with the intent to distribute, and the Seventh Circuit Pattern Criminal Jury Instructions for that offense unequivocally provides the language to use when the actual narcotics are replaced with sham narcotics. Accordingly, Black failed to establish that the given instruction is not an adequate statement of the law, and thus the Court need not address whether the jury was confused by this instruction.

Next, the Court addresses Black's argument concerning the jury's questions asked during deliberations. During the jury's deliberation, they submitted the following questions to the Court: (1) What is the legal definition of a controlled substance; (2) What is the legal definition of an illegal drug; (3) Do we have to consider whether Roland Black knows if the substance in the package is illegal vs. controlled; and (4) If Roland Black doesn't know the difference, does that give him the opportunity to not be guilty. Around the same time that the jury submitted these questions, the Court discovered the jury was unable to access the evidence of the case due to technical issues. The Court then arranged for the technical issues to be fixed and informed the jury that they could resubmit their questions once they had an opportunity to review the evidence. The Court explained

to the parties of its approach to the jury's questions and neither side objected. In the end, the jury did not resubmit their questions.

District courts have considerable discretion in responding to juror questions. *See United States v. Ambrose*, 668 F.3d 943, 965 (7th Cir. 2012); *United States v. Martel*, 792 F.2d 630, 637 (7th Cir. 1986). Here, Black does not address how the Court abused its discretion in its approach to the jury's questions in the context of the technical issues. Moreover, the Court did not refuse to answer the jury's questions, but instead, gave them the opportunity to review the evidence and then resubmit their questions. Last, it is not an abuse of discretion when courts do not answer potentially misleading questions, as was the case here. *See United States v. Cherek*, 734 F.2d 1248, 1252 (7th Cir. 1984). The Court therefore denies this aspect of Black's Rule 33 motion.

Turning to Black's face mask arguments concerning voir dire and the Court requiring counsel to wear facemasks when examining witnesses, Black's trial was one of the first jury trials to resume after the Northern District of Illinois reopened the Dirksen Courthouse and the Chief Judge placed into action numerous health and safety measures in relation to the Covid-19 pandemic. One of the court's policies included that "[a]ll persons in the courtroom, other than witnesses while testifying, will be required to abide by the fact mask requirements." This safety precaution, along with other Covid-19 safety measures, including Covid-19 testing, limiting the number of individuals taking the elevators, hand sanitizer throughout the building, and requiring all individuals in the courtroom to sit six-feet apart, have protected the jurors' health and allowed the courts to resume trials in light of criminal defendant's constitutional right to a speedy trial. Meanwhile, during voir dire, the Court allowed the jurors to pull their masks down when answering individual questions.

It is not clear whether Black is arguing that the mask wearing was an unconstitutional impediment to an effective voir dire because he does not develop his argument. Further, he does not argue that the wearing of masks during voir dire or the requirement that his counsel wear masks

had a prejudicial effect on the verdict or violated his right to a fair trial. Without more, the Court will not make Black's argument for him. *United States v. McClellan,* 165 F.3d 535, 550 (7th Cir. 1999) (courts "are not in the business of formulating arguments for the parties."). The Court denies this part of Black's Rule 33 motion.

Last, Black makes several bare-boned arguments that he fails to substantiate with factual details, citations to the record, and supporting case law. For example, Black argues that the Court erred in denying his cause challenge to a potential juror, but fails to identify the juror or the circumstances surrounding the challenge. He also asserts that the Court erred in denying his motion to dismiss the indictment and erred in its pretrial rulings, including the Court's denial of the joint motion to suppress, motions in limine, and *Daubert* rulings. Moreover, he asserts that the Court erred in denying his oral motions and objections made prior and during trial. Again, Black does not explain why or how the Court erred when making its rulings, and has thus waived these claims. *White v. United States*, 8 F.4th 547, 552 (7th Cir. 2021) ("perfunctory and undeveloped arguments, as well as arguments that are unsupported by pertinent authority, are waived"). As such, Black's argument that the cumulative effect of these errors supports his motion for a new trial similarly fails.

The Court, in its discretion, denies Black's Rule 33 motion for a new trial.

**Conclusion**

For these reasons, the Court denies defendant's Rule 29(c) motion for judgment of acquittal and Rule 33 motion for a new trial [358].

IT IS SO ORDERED.

SHARON JOHNSON COLEMAN
United States District Court Judge

DATED: 10/20/2021